# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-01802-WJM

CHARLES COSTELLO, BRUCE FILIPIAK,
JOSH SELDNER, ANTHONY BAUMANN,
KOURTNEY ERVINE, HANS HASS, IVA HAUKENES,
and BRAD and LINDA McHENRY on behalf of
themselves and all others similarly situated,

       Plaintiffs,

v.

HOMEADVISOR, INC.,
IAC/INTERACTIVECORP., ANGI HOMESERVICES, INC.,
CROWDSTEER INC., and DOES 1 through 10,

       Defendants.

---

## PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION

---

Plaintiffs Kourtney Ervine, Iva Haukenes and Brad and Linda McHenry (collectively, the "Plaintiffs"), through counsel, respectfully move this Court for entry of an order granting class certification for the provisional purpose of effectuating the injunctive and declaratory relief requested in Plaintiffs' Motion for Preliminary Injunction and Declaratory Judgment ("PI/DJ Motion") (Dkt. Nos. 34 and 35) stating as follows.

### CERTIFICATE OF CONFERRAL PURSUANT TO D.C.COLO.LCivR 7.1A

The undersigned counsel conferred with counsel for Defendant HomeAdvisor, Inc. ("HA") regarding this Motion.  Defendant HA opposes this Motion.

1

## INTRODUCTION

This Motion and the PI/DJ Motion relate to HA's deliberate, profit-driven scheme to maintain and exploit the Online Profile Pages ("OPPs") of former Home Service Professionals ("Former HSPs") after they have terminated their memberships with HA. HA's post-termination conduct increases internet traffic to HA's website with the use, maintenance and manipulation of Former HSPs' OPPs.[1] HA's orchestration of the OPPs commences at the outset of the membership solicitation and enrollment process during which the OPPs are presented as a membership benefit.  From that point on, and continuing post-termination, HA asserts dominance over the Former HSPs' internet presence and manipulates the information conveyed through the OPPs for the purpose of generating Leads for HA's financial gain.  HA's conduct irreparably harms the Former HSPs because it conveys material misrepresentations about the Former HSPs that influence the decisions made by the customers, resulting ultimately in the misappropriation of the Former HSPs' business opportunities.  Although, HA has been aware of the claims subject to the PI/DJ Motion for more than 3-months, it continues to exploit the Former HSPs and shows no signs that it will stop these deceptive and unfair business practices.  As a result, HA's abuse of the Former HSPs necessitated Plaintiffs filing of the PI/DJ Motion.

In connection, with its consideration of the PI/DJ Motion, Plaintiffs request that the Court certify a national Lanham Act class and Colorado, Florida and Idaho sub-classes under Federal Rule of 23(b)(2) for the provisional purpose of effectuating the proposed injunction and declaratory relief.  As discussed below, certification of each class is supported by proof that is common to all members of the classes. Because all elements of Rule 23(a) and (b)(2) are satisfied, the Court should certify the proposed classes.

## STATEMENT OF FACTS

---

[1] All capitalized terms used herein are as defined in the Complaint (Dkt. No. 1, cited as ¶____), and in the PI/DJ Motion.

## A.   HA's Business[2]

HA operates an internet based "two-sided home services marketplace[], where both consumers and high-quality service professionals come to be matched to one another." (¶35).  At its core, HA is a Lead service concerned only with exponential Lead growth.   As a result, HA has concocted a systemically flawed and deficient process to generate Leads that are not of the nature and quality of the Leads advertised to HSPs. (¶¶43-66).  One of the tactics HA employs to generate Leads is through the exploitation of its very own HSPs through the misuse of the OPPs that are initially presented to HSPs as a "benefit." In actuality, HA uses the company names and likenesses of Former HSPs to drive traffic to the OPPs hosted by HA with the intent to generate Leads by intercepting and/or redirecting service requests made to Former HSPs and converting them to Leads that are then charged to HA's current HSPs. (¶¶159-190). HA's scheme, which ultimately results in the misappropriation of business opportunities for Former HSPs, generates unauthorized and deceptively derived revenue for HA.

## B.   HA Uses the OPPs to Usurp the Online Presence of Former HSPs

OPPs are created for HSPs that join HA's network under the guise that the pages are a marketing and advertising extension that will result in an increase in customer contacts for the HSPs. *See* ¶181, *see also* Dkt. 35-2, Ex. B. HA creates and activates the customized OPPs for HSPs using information gathered during the enrollment process and through other sources. Such OPPs were created by HA for Plaintiffs Ervine (*see* Dkt. No. 35-4, Ex. D-13 ("Ervine Decl.") at ¶7), Haukenes (*see id.* at Ex. D-12 ("Haukenes Decl.") at ¶6), and McHenrys (*see id.* at Ex. D-5 ("McHenrys Decl.") at ¶9) when they became HA members.  The OPPs are accessible through internet search engine results or through HA's online directory. *See* Dkt. No. 35-1, Ex. A ("Kent Report") at ¶¶17-18. HA uses its online marketing and search engine optimization ("SEO")

---

[2]      Due to page constraints, Plaintiffs refer the Court to the PI/DJ Motion and their Complaint for a complete recitation of the facts.

capabilities to convince search engines, such as Google, that the OPPs are more relevant and useful to a user than other search results, which causes the HSPs' HA Online Profile Profiles to appear at the top of internet search results, even post-termination. *See* Kent Report at ¶¶16-43; *see also* Dkt. 35-1, Ex. C-13, Ex. C-12 and Ex. C-4. As a result, customers searching for a specfic HSP are more likely to select the Former HSP's HA Online Profile Page than other results.

**C.    HA Uses Former HSPs' OPPs to Hijack Customers and Generate Lead Revenue**

After cannibalizing the online presence of Former HSPs and driving prospective, or even current consumers to the OPPs of Former HSPs, HA uses the following strategies to make misleading and false representations about the Former HSPs to generate revenue for HA.

*1.     OPPs With a "Get a Quote" Button.* HA uses a deceptive "Get a Quote" button on Former HSP OPPs, which are indistinguishable from the OPPs of current HSPs, to intentionally mislead customers. This is accomplished through two separate, but related methods. Once a prospective customer enters their address, one of two pop-up windows will display. *See* Dkt. 35-5, Ex. E; I, Kent Report at ¶¶65-72. The first pop-up window prompts the customer to provide project details that, supposedly, are then submitted directly to the selected HSP upon clicking "Get a Quote" ("active 'Get a Quote'"). *See* Kent Report at ¶¶65-66. However, HA intercepts this service request that was generated under false pretenses, and converts it into a Lead that is then sold to other active HSPs. *See id.* at ¶¶70-72.

In the alternate, second pop-up window, HA falsely states that the Former HSP does not provide service in the area selected by the prospective customer. *See* Kent Report at ¶¶67-68. Furthering the deception, the page also states: "See Pros who provide service to [zip code]" which is hyperlinked to a HA webpage containing a list of featured HSPs offering similar services in the selected service area and prompts prospective customers to submit the desired service request to these active HA HSPs. *Id.*

　　　　**2.  *OPPs With a Misleading "Alert".*** HA uses the following "alert" on Former HSPs OPPs, which is denoted by an exclamation point and bold red font: "**Please Note**: This business is not a screened and approved member of HA." *See* Dkt. No. Haukenes Decl. at ¶¶6-8. This is an obvious misleading and deceptive statement intended to denigrate the public's perception of the Former HSPs' businesses, so as to confuse and cause the prospective customer to alter course and submit a service request to another active HA HSP through the solicitation request box that appears below the alert which touts, "Get Quotes from up to 3 Prescreened" HSPs (emphasis added). *See* Haukenes Decl. at ¶7; *see also* Kent Report at ¶¶108-110.

　　　　**3.  *OPPs Associated with the Company Names of Former HSPs.***
HA's other parasitic tactic involves deleting the content of the Former HSPs' OPPs, but continuing to maintain a URL that includes Former HSPs' business names. *See* Ervine Decl. at at ¶¶9-10. Once on the Former HSPs Online Profile Page, hosted on HA's website, prospective customers are informed that the "page [they] are looking for is no longer available", which gives the false impression that the Former HSPs are no longer in business. The overt act of altering the OPPs of Former HSPs, but retaining the URL reflecting the name of the Former HSPs is done with the intent to capture prospective customers who are affirmatively searching for the Former HSPs and siphon them off to active HSPs by inviting them to: "Follow the links below to be matched to top-rated pros for your projects." *See* Kent Report at ¶¶81-87.

**D.**　　**Plaintiffs Have Been and Continue to Be Harmed by HA's Deceitful Conduct**

　　　　HA's deliberate fraudulent use and falsifying of information about Former HSPs, whose company names and OPPs are used to drive traffic to HA's site, is a misappropriation of business opportunities and anti-competitive behavior. *See id.* at ¶¶100-107. HA's manipulation of the OPPs harm not only the Former HSPs, but the prospective customers.  Prospective customers are being redirected, unknowingly in certain circumstances, to other active HSPs who are paying for the customers' service request with the expectation that the customer is interested in being

contacted by them, meanwhile the customers are bombarded by a bevy of HSPs, none of which include the Former HSP that the customer requested. The only party profiting from this scheme and marketplace confusion is HA.

Plaintiffs Ervine, Haukenes and McHenrys have all been, and continue to be, victimized by HA's conduct. Plaintiffs Ervine, Haukenes and McHenry terminated their memberships with HA in August 2017, March 2017, and July 2017, respectively (*see* ¶¶12, 95, 128, 186), and yet, HA continues to use their OPPs to mislead prospective customers and generate illicit revenue for HA.

***Plaintiff Ervine.*** For over a year post-termination, HA maintained an Online Public Profile page containing an active "Get a Quote" button that gave customers the false impression that they were submitting service requests directly to Plaintiff Ervine's company, Glass Act Window Cleaning. *See* Ervine Decl. at ¶¶7-8; *see also* ¶185. Then on or about August 27, 2018, HA altered her company's profile information by deleting the profile information and inserting the following notice: "The page you are looking for is no longer available" which precedes the prompts to "[f]ollow the links below to be matched to top-rated pros for your project." *Id*. at ¶9. This misleading webpage is associated with a URL address that still reflects Plaintiff Ervine's company name which, as of August 28, 2018, continued to appear as a top three Google search result. *Id*. at ¶¶9-10 ; Dkt. No. 35-1, C-13.

***Plaintiff Haukenes.*** Plaintiff Haukenes was a member of HA for less than a month before terminating her membership in March 2017; however, HA continues to maintain an Online Profile Page that contains misleading information, and ranks among the top two Google search results as of October 1, 2018. *See* Dkt. No. 35-1, Ex. C-12. Initially, Plaintiff Haukenes' Online Profile Page contained an active "Get a Quote" button, but sometime thereafter, HA altered the page by changing the phone number, address, and other information on the Online Profile Page and inserting the following denigrating alert: "**Please Note**: This business is not a

screened and approved member of HA." ¶¶187-190, Haukenes Decl. at ¶¶6-7. After the filing of the PI/DJ Motion, HA, yet again, revised Plaintiff Haukenes' Online Profile Page by replacing it with the following disclaimer: "The page you are looking for cannot be found." See Ex. A. Irrespective of HA's overt act, HA's SEO continues to outpace the other Google search results which ultimately results in customer confusion and harm to Plaintiff Haukenes' business. *See id.*

*McHenry Plaintiffs.* After terminating their membership with HA in July 2017, HA continued to maintain the McHenry Plaintiffs' Online Profile Page with an active "Get a Quote" for at least a year. ¶186. Thereafter, HA adjusted the "Get a Quote" button to incorrectly state that "B&B Carpentry does not provide service to" the specified area, followed by a hyperlink to view and submit service requests to other active HA HSPs. McHenry Plaintiffs Decl. at ¶¶9-11. After the filing of the PI/DJ Motion, HA, yet again, altered the McHenry Plaintiffs' Online Profile Page by replacing it with the following disclaimer: "The page you are looking for cannot be found." See Ex. B. Irrespective of HA's overt act, HA continues to maintain a URL that contains the McHenry Plaintiffs' company name which remains the top Google search result, thereby wrongfully driving online traffic and service request inquiries to HA. *See id.*

At bottom, HA knowingly creates, maintains, and actively manipulates the Online Public Profiles of Former HSPs, including Plaintiffs, to wrongfully portray former HSPs' businesses and to steer prospective customers away from former HSPs.  HA's gamesmanship in revising Plaintiffs' OPPs post-lawsuit and PI/DJ Motion does not alter the viability of the Plaintiffs' claims, their standing as class representatives, or the relief sought in the PI/DJ Motion.

## ARGUMENT

### A.     The Proposed Classes and Claims

For purposes of the PI/DJ Motion, Plaintiffs seek certification of their claims of false advertising and false association under the Lanham Act, 15 U.S.C. § 1125, unfair competition under Colorado and Florida law, and violations of the Colorado Consumer Protection Act,

Florida Deceptive and Unfair Trade Practices Act, and Idaho Consumer Protection Act.  The elements of these claims have been set for in the PI/DJ Motion.  *See* pgs. 8, 11-13.  Specifically, Plaintiffs request that the Court certify the following classes for the purpose of effectuating the proposed injunction and declaratory relief (collectively the "Injunction Classes"):[3]

**Lanham Act Class**
All persons and entities who since July 13, 2015, terminated a home service professional membership (including for HomeAdvisor's Pro Connect[TM], Total Connect[TM], and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) and whose names, likeness or trademark appeared on HomeAdvisor's website or any HomeAdvisor affiliate website.

**Colorado Misappropriation Class (represented by the McHenry Plaintiffs)**
All persons and entities during the Class Period who [are domiciled] in Colorado and terminated a home service professional membership (including a HomeAdvisor Pro Connect[TM], Total Connect[TM], and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) on or after July 13, 2015, and whose names, likeness, or trademark appeared on HomeAdvisor's website or in relation with any HomeAdvisor affiliate website.

**Florida Misappropriation Class (represented by Plaintiff Ervine)**
All persons and entities during the Class Period who are domiciled in Florida and terminated a home service professional membership (including a HomeAdvisor Pro Connect[TM], Total Connect[TM], and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) on or after July 13, 2014, and whose names, likeness or trademark appeared on HomeAdvisor's website or in relation with any HomeAdvisor affiliate website.

**Idaho Misappropriation Class (represented by Plaintiff Haukenes)**
All persons and entities during the Class Period who are domiciled in Idaho and terminated a home service professional membership (including a HomeAdvisor Pro Connect[TM], Total Connect[TM], and/or for the predecessor or subsequent HomeAdvisor home service professional membership programs) on or after July 13, 2016, and whose names, likeness or trademark appeared on HomeAdvisor's website or in relation with any HomeAdvisor affiliate website.

Excluded from the classes is HA, any entity in which HA has a controlling interest, and HA's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors,

---

[3] *See* Fed. R. Civ. P. 23(c)(5) (permitting a class to be divided into subclasses).

subsidiaries, and assigns; governmental entities; and, any judge or magistrate presiding over this action, as well as their immediate family members.

**B.      The Applicable Legal Standards**

Rule 23 provides the Court with sufficient flexibility to certify the Injunction Classes. Fed. R. Civ. P. 23(c)(4) ("[A]n action may be brought or maintained as a class action with respect to particular issues."). To obtain class certification, a plaintiff must show that the "proposed class satisfies the requirements of Rule 23(a) and the requirements of one of the types of classes in Rule 23(b)." *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010); Fed.R.Civ.P. 23. A court "must conduct its own 'rigorous analysis' to ensure Rule 23's requirements are met." *DG*, 594 F.3d at 1194. However, this does not allow the Court "to engage in free-ranging merits inquiries at the certification stage." *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 133 S.Ct. 1184, 1194–95 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 1195. Thus, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *DG*, 594 F.3d at 1194 (citation omitted).  The Tenth Circuit favors a liberal interpretation of Rule 23.  "If there is error to be made, let it be in favor and not against maintenance of a class action."  *Rhodes v. Olson Assocs., P.C.*, 83 F.Supp. 3d 1096, 1111 (D. Colo. 2015) *citing Esplin v. Hirschi*, 402 F.2d 94, 99 (10th Cir. 1968).

**C.      Plaintiffs satisfy Rule 23(a).**

Under Rule 23, the Court may certify a class that meets the four prerequisites under Rule 23(a) and complies with at least one of the requirements under Rule 23(b). "Rule 23(a) requires numerosity of class members, commonality of at least one question of fact or law among the class, typicality of named plaintiffs' claims or defenses to the class's claims or defenses, and

adequacy of the named plaintiffs and their attorneys as class representatives." *DG*, 594 F.3d at 1194 (citing Fed.R.Civ.P. 23(a)(1)–(4)).

### 1.     *Numerosity.*

The proposed class "is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1).  The impracticability of joinder requirement does not require that joinder is impossible, but only that the plaintiffs "will suffer a strong litigational hardship or inconvenience if joinder is required." *Cook v. Rockwell Intern. Corp.,* 151 F.R.D. 378, 384 (D. Colo. 1993).  "In determining whether a proposed class meets the numerosity requirement, 'the exact number of potential members need not be shown,' and a court 'may make common sense assumptions to support a finding that joinder would be impracticable.'" *In re Thornburh Mortgage, Inc. Sec. Litig.,* 912 F.Supp. 2d 1178, 1221 (D.N.M. 2012)(quotation omitted).

HA has reported that it has approximately 202,000 active HSPs in its network; yet, it has more than 390,000 OPPs indexed. Kent Report at ¶124.  Because the Injunction Classes consist of potentially more than 180,000 members, joinder of all those individuals is impracticable and numerosity is satisfied. *See Helmer v. Goodyear Tire & Rubber Co.,* 2014 U.S. Dist. LEXIS 37501, *12-13 (D. Colo. March 21, 2014)(finding numerosity met where class consisted of 132 members).

### 2.     *Commonality.*

To satisfy commonality, the "[p]laintiff must allege a 'common contention of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).  In other words, "[w]hat matters to class certification is not the raising of common 'questions' but, rather the capacity of classwide proceedings to generate common answers apt to drive the resolution of litigation." *Id.* Courts find commonality is met where the class's claims arise from a uniform course of conduct

on the part of the defendant.  *See Kerns v. Spectralink Corp.,* 2003 U.S. Dist. LEXIS 11711, *5-6 (D.Colo July 1, 2003).

In this case, there are multiple common questions of law and fact – all of which focus on HA's conduct of maintaining Former HSPs' OPPs with false and misleading statements.  HA's false advertising, unfair competition and deceptive business practices include: 1) maintaining Former HSPs OPPs with a "Get a Quote" Button that falsely states either that (a) the consumer is submitting a quote directly to the Former HSP, or (b) the Former HSP does  not provide service within the specified area; 2) inserting an "alert" on Former HSPs' OPPs that states the Former HSP "is not a screened and approved member of HA;" 3) maintaining URL addresses containing the company names of Former HSPs that are linked to OPPs that proclaim the "page you are looking for is no longer available;" and 4) diverting customers from the Former HSPs to HA in order to generate Leads that HA sells to active HSPs.

All claims for which Plaintiffs seek class treatment are based upon HA's uniform conduct of maintaining Former HSPs' OPPs and the effect such conduct has on a reasonable consumer, and resultant detrimental and ongoing impact on the classes.  Whether HA's practices are deceptive is determined by the reasonable consumer standard which does not present individual issues.  *In re Santa Fe Natural Tobacco Co. Mktg. & Sales Practices & Prods. Liab. Litig.*, 288 F. Supp. 3d 1087, 1227-1228 (D.N.M. Dec. 21, 2017)(the reasonable consumer standard governs false advertising claims); *Suchanek v. Sturm Foods, Inc*., 311 F.R.D. 239, 253 (S.D. Ill. 2015)("the question whether [defendant's advertising] was likely to mislead a reasonable consumer is common to the claims of every class member.") This is sufficient to satisfy commonality.

### 3.       *Typicality.*

The "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3).  "[A] named plaintiff's claim is 'typical' when it arises out

of the same event, practice, or course of conduct of the defendant, and is based on the same legal theory on which the class claims are predicated." *Murphy v. Lenderlive Network, Inc.*, No. 13-3135-RBJ, 2014 U.S.Dist.LEXIS 150284 at 12 (D.Colo. Oct. 22, 2014)(citation omitted); *DG*, 594 F.3d at 1199 (typicality exists where "all class members are at risk of being subjected to the same harmful practices"). "Provided the claims of Named Plaintiffs and class members are based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." *DG*, 594 F.3d at 1198–99.   For the same reason that there are overwhelmingly common issues of fact and law, the Plaintiffs' claims are typical of the class. *See Wal-Mart*, 564 U.S. at 349 n.5 ("The commonality and typicality requirements of Rule 23(a) tend to merge").

Plaintiffs' claims mirror those of the Injunction Classes that Plaintiffs seek to represent because each Plaintiff and member of the Injunction Classes are being irreparably harmed by HA's continued use of their OPPs and the deceptive practices deployed attendant to such pages. Plaintiffs and the members of the Injunction Classes were subjected to HA's unauthorized use of their business names and information on the OPPs that contained false and misleading statements regarding: their affiliation with HA; availability; their reputation; the quality of their services; and whether they are still in business. The harm to Plaintiffs and the members of the Injunction Classes is not merely the maintenance of the OPPs, it also includes the false and misleading nature of the OPPs.  HA cannot make any excuses for why individual Former HSPs remain listed on its website to avoid the consequences for its deliberate and systematic false advertising. *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 599 (N.D. Cal. 2015)("[Rule 23] does not require us to examine the viability of basis for class members' claims for declaratory or injunctive relief, but only to look at whether the class members seek uniform relief from a practice applicable to all of them.")

The Court should reject any arguments from HA that the McHenry and Haukenes Plaintiffs lack standing – and therefore typicality - to serve as class representatives as a result of

the changes HA made to their OPPs after the filing of both this Action and the PI/DJ Motion. HA continues to maintain URLs, similar to that of Plaintiff Ervine, with the McHenry Plaintiffs' and Plaintiff Haukenes' company names with misleading disclaimers that are likely to deceive potential consumers.  See Exs. A and B; *supra* Section D; Kent Report ¶¶81-87; 90; 111-114. Moreover, absent an injunction that compels HA to materially change its policies and practices with respect to Former HSPs, there can be no assurance that HA will not reverse any modification of the Plaintiffs OPPs.  Indeed, despite its reactive modification of these Plaintiffs' OPPs, HA continues to use McHenry's and Haukenes' OPPs.  For all these reasons, each Plaintiff has Article III standing.  *TrafficSchool.com, Inc. v. Edriver Inc*., 653 F.3d 820, 825-828 (9th Cir. 2011); *Audi AG v. D'Amato*, 381 F. Supp. 2d 644, 656 (E.D. Mich. Aug. 4, 2005)(plaintiff continues to have standing to seek an injunction until the defendant "irrefutably demonstrate[s]" it has changed its unfair practices).

### 4.      *Plaintiffs Will Fairly and Adequately Protect the Class.*

Plaintiffs "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The adequacy requirement ensures that there are no potential "conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002)(citation omitted).  Adequacy "also factors in competency and conflicts of class counsel." *Id.* at 1188 (quoting *Amchem*, 521 U.S. at 626 n.20).

Here, Plaintiffs' interests are identical to the interests of the Injunction Classes. All seek to stop HA's use, maintenance and manipulation of Former HSPs OPPs. *See* PI/DJ Motion at pgs. 4-13. Likewise, Plaintiffs' counsel, consisting of Chimicles & Tikellis LLP and Sherman &

Howard, L.L.C., are well-qualified and highly experienced in class action and complex litigation.[4]  Plaintiffs' counsel have devoted a significant amount of time to identifying and investigating the potential claims and will continue to commit the resources necessary to prosecuting the claims.  Accordingly, the adequacy requirement is satisfied.

**D.      Plaintiffs' action should be certified under Rule 23(b)(2).**

Given the limited purpose of the Injunction Class, certification is appropriate under Rule 23(b)(2).  Class certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  A defendant's conduct is directed towards the class, within the meaning of Rule 23(b)(2), "even if it has taken effect or is threatened only as to one or a few members of the class, provided it is based on grounds which have general application to the class."  Fed. R. Civ. P. 23(b)(2) advisory committee notes on 1966 amendments.  Certification of a class under Rule 23(b)(2) for purposes of a preliminary injunction and declaratory relief has been held to be appropriate.  *Ashley v. Reg'l Transp. Dist.*, 2008 U.S. Dist. LEXIS 12950, *18-19, *D. Colo. Feb. 11, 2008); *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir. 2012)(certifying a provisional class for a preliminary injunction).

Certification is appropriate given the purpose of the Injunction Classes: to enforce the proposed injunction and declaratory relief and protect class members from HA's ongoing violations of the Lanham Act and Colorado, Florida and Idaho law.  An order enjoining HA's false advertising and unfair and deceptive trade practices would provide relief to all class members, and apply to them equally.  Plaintiffs seek declaratory and injunctive relief, which is the type of relief that is best suited to certification under 23(b)(2).  *Ries v. Ariz. Bevs. USA LLC*,

---

[4]      The firm resumes of Chimicles & Tikellis LLP and Sherman & Howard, L.L.C. are submitted herewith as Exhibits C and D.

287 F.R.D. 523, 541, (N.D.Cal. Nov. 27, 2012)("This case exemplifies the kind of action that may be appropriate for certification under Rule 23(b)(2), at least insofar as plaintiffs request: (1) declaratory relief that the alleged practices are unlawful, and (2) injunctive relief prohibiting defendants from continuing them.")

## CONCLUSION

For the reasons discussed above, the requirements of Rule 23 are satisfied.  Plaintiffs respectfully request that the Court enter an order certifying the proposed Injunction Classes pursuant to Rule 23(b)(2), appoint the named Plaintiffs as class representatives, and appoint their counsel as class counsel, and ordering that Plaintiffs submit a proposed notice plan and form of notice within a reasonable time following entry of the order.

Respectfully submitted this 22nd day of October 2018.


**SHERMAN & HOWARD, L.L.C.**            **CHIMICLES & TIKELLIS LLP**

*/s/ Gordon W. Netzorg*                   */s/   Nicholas E. Chimicles*
Gordon W. Netzorg                         Nicholas E. Chimicles
Mark W. Williams                          Kimberly M. Donaldson Smith
Carla R. Martin                           Stephanie E. Saunders
633 17th Street, Suite 3000               361 West Lancaster Avenue
Denver, CO 80202                          One Haverford Centre
Phone: 303-299-8381                       Haverford, PA 19041
Fax: 303-298-0940                         Phone: 610-642-8500
gnetzorg@shermanhoward.com                Fax: 610-649-3633
mwilliams@shermanhoward.com               nec@chimicles.com
cmartin@shermanhoward.com                 kds@chimicles.com
                                          ses@chimicles.com

**Attorneys for Plaintiffs**

                                                     and

Scott M. Tucker
**CHIMICLES & TIKELLIS LLP**
222 Delaware Avenue
Suite 1100
P.O. Box 1035
Wilmington, DE  19899
Phone: 302-656-2500
Fax: 302-656-9053
Scotttucker@chimicles.com


*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 22, 2018, I electronically filed the foregoing **PLAINTIFFS' MOTION FOR PROVISIONAL CLASS CERTIFICATION** with the Clerk of the Court using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

/s/      *Nicholas E. Chimicles*
Nicholas E. Chimicles