IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01802-WJM-MEH

CHARLES COSTELLO, et al.,

       Plaintiffs,

v.

HOMEADVISOR, INC., et al.,

       Defendants.

## DECLARATION OF RYAN J. SULLIVAN

    I, Ryan J. Sullivan, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America the following:

    1.    I make the following statements based on my personal knowledge, and based on my review and understanding of HomeAdvisor, Inc. ("HomeAdvisor") business records and information collected by employees of HomeAdvisor who report directly or indirectly to me.

    2.    I am Chief Technology Officer at HomeAdvisor, Inc.  In this position, I oversee all technology areas for HomeAdvisor, including software development, systems administration, business intelligence, desktop and call center platforms and system integrations.  Prior to this role, I served as the Executive Vice President of Technology for HomeAdvisor since 2017, the Senior Vice President of Technology for HomeAdvisor since 2012, and previously held several other leadership roles in HomeAdvisor's Technology Department.  I joined the company in 2000.

3. By virtue of my tenure at HomeAdvisor and my work in prior positions that have involved managing various aspects of technology work at HomeAdvisor, I am familiar with the company's websites, software development, communications platforms including email and telephony, and data storage and archiving. I have established and carried out HomeAdvisor's information technology procedures and protocols, including those related to HomeAdvisor's websites and the contents thereof and related to records maintained with respect to accounts of current and former service professional members of HomeAdvisor. Throughout my work in the Technology Department at HomeAdvisor, I have been responsible for maintaining and regularly accessing HomeAdvisor's electronic business records, including archived records of HomeAdvisor's communications with member service professionals. I am also familiar with how other employees in the Technology Department conduct these tasks, and am confident in the accuracy of the materials that I and others have collected and reviewed in connection with the matters discussed in this Declaration. In addition, I am generally familiar with HomeAdvisor's business operations, including the process by which service professional businesses ("SPs") become members of HomeAdvisor, the technology relating to HomeAdvisor's interactions with SPs, the operation and development of HomeAdvisor's websites, and the company's policies and procedures relating to its Service Professional Terms and Conditions ("Terms and Conditions").

4. HomeAdvisor provides a service that matches consumer service requests for home improvement, repair and maintenance tasks to SPs that are members of HomeAdvisor's network and are profiled to perform the tasks requested by the consumers. In addition to its matching service, HomeAdvisor offers assists SPs in creating or fortifying their online business profile and provides consumers with relevant information about SPs via its LiveDirectory.

HomeAdvisor's LiveDirectory is an online directory of profile pages for SPs that contain SP business contact information.  The profile pages may also include a description of the services offered by the SP and Ratings & Reviews from customers of the SP.  HomeAdvisor also offers other services to consumers looking to find information for home improvement and repair projects, such as a True Cost Guide and a project planning and design application called DesignMine.  HomeAdvisor's services are free to consumers, while service professional businesses pay for memberships and incur lead fees when matched to consumer service requests.

5.      HomeAdvisor offers membership to SPs that meet certain background pre-screening criteria and agree to HomeAdvisor's Terms and Conditions applicable to membership. In the vast majority of circumstances, at present (and during relevant times in the last few years), HomeAdvisor offers membership subscriptions to eligible SPs on an annual basis.  Absent a disqualifying event (such as HomeAdvisor learning that the SP has become ineligible under HomeAdvisor's pre-screening criteria), these annual membership subscriptions are valid for a full year from the date of approval.  The membership subscription provides member SPs with many benefits, including the salient benefit of the creation of a profile page that is included in the HomeAdvisor LiveDirectory (a "member profile page").  Among other features, a salient feature of member profile pages in the LiveDirectory is the display of verified Ratings & Reviews for the SP.  Ratings & Reviews are customer comments and ratings for a particular SP that can be submitted by a consumer via their HomeAdvisor account after they hire an SP for a job, or can be verified customer reviews provided by a member SP for use on their member profile page. Consumers using HomeAdvisor's consumer-facing website, www.homeadvisor.com, may browse the LiveDirectory by clicking on a tab in the website header called "Pro Reviews" and

then choosing a type of service from a drop-down list and entering a ZIP code where they are interested in searching. *See* https://www.homeadvisor.com/c.html.

6.      As discussed above, HomeAdvisor's memberships are generally offered for annual periods and membership includes the benefit of having a member profile page listed in the LiveDirectory. An annual membership with HomeAdvisor costs $287.99 or $348.98 if the membership selected includes mHelpDesk, industry-leading mobile office management software. (The higher membership cost covers the SP's first month of mHelpDesk.) Member SPs also generally purchase leads (consumer service requests) from HomeAdvisor, and the lead purchasing service is offered separately from and in addition to the membership subscription. HomeAdvisor has a standard policy regarding the effect of a member SP's cancellation of their account, which to my knowledge has been in effect since HomeAdvisor began offering annual memberships. Under that policy, when a member SP makes a cancellation request, HomeAdvisor terminates the lead purchasing service for the SP, so the SP does not continue to receive leads from HomeAdvisor for which they are charged. With respect to the SP's membership, HomeAdvisor honors the membership for the remaining duration of applicable subscription period. Thus, for annual memberships which exist in most cases, if an SP requests cancellation before their membership subscription expires, then HomeAdvisor will terminate the lead purchasing services while honoring the membership subscription until a date one year after the SP's annual membership was approved (or was renewed, as applicable). It is my understanding that HomeAdvisor has established this policy of honoring the full membership term even after an SP cancels their lead purchasing services because HomeAdvisor recognizes

that the SP has paid for an annual term and should get the benefit of the bargain with respect to that full membership period (unless some disqualifying event occurs, as noted above).

7.      In view of these membership characteristics offered by HomeAdvisor and the policies described above, the Technology Department has established a policy regarding the display of member profile pages for SPs. Specifically, member profile pages are displayed in the LiveDirectory from the date of their creation after account approval until the expiration of the SP membership period, unless the cancelling SP instructs HomeAdvisor to remove their member profile page. (HomeAdvisor may cease to display a particular SP's profile page at any time due to certain circumstances, such as due to a legal issue with the SP or issues relating to pre-screening or reported poor customer interactions.) Thus, if an SP requests cancellation of their account before their membership subscription expires, HomeAdvisor's policy is to display the SP's member profile page in the LiveDirectory until the membership subscription expires. By doing so, HomeAdvisor provides the member SPs the benefits of prepaid membership that they purchased, specifically including the display of their individually-curated member profile page, which displays the descriptive content about the business provided by the SP, Ratings & Reviews (if applicable), HomeAdvisor's Seal of Approval (indicating the SP was screened and approved by HomeAdvisor), and other content such as achievements by the SP within HomeAdvisor's member network.

8.      HomeAdvisor continues to display the member profile page for SPs throughout their membership period. After an SP cancels their account, but while time still remains on their prepaid membership, certain changes are made to ensure that only the SP supplied business contact information for SP is displayed on the SP's member profile page. Such SP supplied

contact information typically includes the direct phone number for the SP (as provided by the SP to HomeAdvisor), as opposed to a metered phone number. By way of background, a metered phone number is displayed on member SP profile pages before the SP cancels their account in certain scenarios, such as when a consumer browses HomeAdvisor's LiveDirectory and chooses a specific member SP. In those cases, metering allows HomeAdvisor to confirm the consumer's service request information prior to connecting the consumer with the member SP and to track the lead as billable under the terms of the member SP's contract with HomeAdvisor. If a member SP requests cancellation, however, for the duration of their remaining membership period after such request, HomeAdvisor places that member on non-metered status, meaning that they will not be charged for any leads by HomeAdvisor, and a metered number will not be displayed on their profile page in any scenario.

9.     After the expiration of a cancelled SP's membership subscription, HomeAdvisor may display a different type of profile page for the SP in the LiveDirectory (a "non-member profile page"). A non-member profile page will contain much more limited information than a member profile page, typically only listing the SP's business contact information. The contact information displayed on non-member profile pages is (absent some unexpected error or bug) only SP supplied contact information. In some instances where the SP was formerly a member of HomeAdvisor, the non-member page will allow consumers to review Ratings & Reviews for the SP that were generated in connection with their former membership. If a consumer were to call the phone number listed on a non-member profile page, they presumably should reach the listed SP directly.

10.     I have reviewed the Expert Report of Peter Kent, which I understand was submitted by Plaintiffs in connection with their request for a preliminary injunction and/or declaratory judgment in this lawsuit.  Mr. Kent's report focuses on a subset of possible search engine searches consumers might undertake with regard to SP businesses, referred to as branded searches.  That is, when a person searches for a businesses' brand name or business name, the conduct a branded search.  With regard to branded search engine searches for an SP, HomeAdvisor's policy (dating back at least to 2009) has consistently been to *not* attempt to charge the SP for any lead resulting from that search.  To the contrary, HomeAdvisor's policy, which has been implemented by the Technology Department, is to provide any leads that derive from a branded search engine search for an SP to that SP free of charge.

11.     Mr. Kent suggests in his report that HomeAdvisor has engaged in conduct that is designed to intentionally get SP profile pages highly ranked for branded search terms (e.g., the SP's business name) and then divert clicks or traffic from the branded search results to member SPs in HomeAdvisor's network other than the SP subject to the branded search.  This suggestion is false.  HomeAdvisor has consistently rejected an approach that would seek to monetize traffic from branded search engine searches for an SP.  Likewise, to my knowledge, HomeAdvisor does not purchase branded keywords for SPs.

12.     HomeAdvisor's rejection of any attempt to monetize or divert branded search traffic for SPs is reflected in several ways.  Significantly, HomeAdvisor does not display any metered contact information for any SP when a consumer reaches an SP profile page from an internet search engine.  The webpages of www.homeadvisor.com devoted to SP profile pages are coded so that only the SP provided contact information is displayed if a consumer lands on that

page from a link found with a branded search on a search engine. That means that if the consumer decides to call the SP phone number listed on that profile page after arriving on the page from an internet search, they are calling the number provided to HomeAdvisor by the SP. SP provided contact information is always displayed on SP profile pages (member profile pages or non-member profile pages) for SPs who have cancelled their account with HomeAdvisor. Likewise, with very limited exceptions, SP provided contact information is also displayed with respect to active lead purchasing members of HomeAdvisor when a consumer arrives from an internet search.

13.    HomeAdvisor's intent *not* to profit from branded search traffic for SPs is also reflected with respect to the "Get a Quote" button that appears on member profile pages. Prior to February 2018, the Get A Quote button displayed on member profile pages reached via a branded search engine search allowed consumers to email the SP directly. The pathway that followed from clicking on that Get a Quote contact button included a contact form that allowed the consumer to send an email including pertinent information such as their own contact information, a project category and any comments. If submitted, such an email would go directly to the email address provided by the SP to HomeAdvisor. HomeAdvisor never charged any SPs for these email contacts, and never intended to monetize any leads that resulted from such contacts. HomeAdvisor, however, received some complaints from SPs to the effect that they were receiving undesirable emails through this email contact feature on their profile page. To address these complaints, HomeAdvisor undertook to design an updated pathway for the Get a Quote button presented in response to branded search engine searches, which would produce higher quality contacts and potential leads by better filtering direct electronic contacts to the SPs.

This undertaking resulted in replacing, in February 2018, the email pathway described above with a service request submission pathway that required certain additional steps to be completed in order to transmit the request to the profiled SP.

14.     The Get a Quote button appearing on member profile pages reached via a branded search engine search has always been designed to provide a free lead to the listed SP.  The updated pathway referenced in paragraph 13 above was designed to increase the quality of those free leads.  To increase the quality of any leads resulting from a consumer's use of the Get a Quote button following their branded internet search, the updated pathway requires the consumer to first provide an address and zip code where the project will be located, and then provide additional details about the project type and project details as well as their contact information. This quote pathway requiring the consumer to complete several steps and provide more information about their project as well as their contact information was intended to allow the SP to receive a free customer contact without the spam that had sometimes passed through the prior e-mail pathway to SPs resulting from branded search traffic.

15.     If a consumer arrives at a member profile page via a branded search engine search, clicks on the Get a Quote button on that profile page, completes the required fields and is able to submit their request for a quote, that request will be transmitted to the SP to which the profile page relates via their supplied contact information.  Unless some unexpected error or bug occurs, HomeAdvisor does not divert requests for quotes made via the Get a Quote button after performing a branded search to another SP.  To the extent that Mr. Kent suggests otherwise in his report, he is incorrect.

16.     Mr. Kent focuses in his report on an error message that may have been displayed in certain circumstances when a user follows the Get a Quote button after arriving on a member profile page from a branded internet search. Specifically, Mr. Kent points to an error message that stated "[SP business name] does not provide service to [zip code]." This error message may have appeared either because: (1) the user entered a zip code that was not included in the zip code areas serviced by the SP, per the geographic service area information provided by the SP to HomeAdvisor; or (2) the way certain SPs were removed from the lead purchasing service after lead buying cancellation caused their matching profiles to return this error. As discussed above, HomeAdvisor has never intended to capture and divert search traffic from a branded search for an SP, and the display of the error message was not a result of some change in HomeAdvisor policy. Rather, in the second scenario, the display of the error message was an unintended outcome.

17.     As a result of learning of this issue involving the possibility of an unintended display of the error message about the SP's service area, HomeAdvisor has made corrections for the Get a Quote pathway when a consumer arrives from a branded internet search for an SP. Since at least October 30, 2018, if a consumer arrives on a member profile page from a branded internet search, clicks the Get a Quote button, and enters a zip code outside the zip codes the SP provided to HomeAdvisor in connection with their HomeAdvisor account, then a message will display stating "[SP business name] is not currently accepting service requests from HomeAdvisor in [zip code]." If that consumer entered a zip code that falls within the zip codes provided by the SP to HomeAdvisor for their account, then no such message will display and the consumer would be able to proceed to the next step in the pathway and choose whether to enter

-10-

the additional details and submit their request for a quote to the SP.  In that case, the request for a quote is transmitted directly to the profiled SP, using the contact information they provided.

18.     Mr. Kent also takes issue with the appearance of a statement on non-member profile pages that advised consumers: "Please Note: This business is not a screened and approved member of HomeAdvisor."  Mr. Kent's suggestions of some deception or nefarious intent by HomeAdvisor with regard to this advisement are unfounded for several reasons.  First, the statement in question was a true statement; it would only appear on non-member pages for SPs that formerly held memberships which were expired (i.e., there was no time remaining on the applicable membership subscription) or never held a membership.  Second, regarding the underlying intent for the statement, HomeAdvisor had no motive to disparage any particular SP. HomeAdvisor's LiveDirectory is available to the general consumer public.  It is my understanding that the language of the cited advisement is precautionary in nature, in that it is meant to clearly communicate to consumers that HomeAdvisor makes no claim that the SP has passed HomeAdvisor's background pre-screening criteria within the relevant timeframe.  As I noted above, SPs must pass HomeAdvisor's pre-screening criteria in order to be approved for a membership.  If an SP's membership subscription expires, then they must undergo such pre-screening again before they are eligible for a new membership with HomeAdvisor.  Thus, the advisement language in question was designed to avoid any misperception by a consumer that a non-member SP had passed HomeAdvisor's requisite pre-screening criteria.  Third, even though the advisement language cited by Mr. Kent was true and not intended to harm or disparage any SP, since at least October 30, 2018 that advisement language has been altered to state: "Please Note: This business is not a current member of the HomeAdvisor network."

-11-

19.     Mr. Kent also appears to challenge HomeAdvisor's display of a webpage indicating that a prior profile page is no longer available on HomeAdvisor's website. The web pages referred to by Mr. Kent do not make any statements about any specific SP. To the contrary, such "no longer available" pages were affirmatively created to avoid making any reference by name to any SP. In my experience, the content of these pages is unlikely to cause them to be indexed by search engines, since there are no branded terms referring to an SP on the pages. Even though there are no statements about any SPs on the "no longer available" web pages and nothing nefarious about their existence, HomeAdvisor has nonetheless updated the signal it sends to search engines to expressly indicate that the page does not exist and the search engine should not continue showing it in search results (i.e., a "404" signal).

20.     SPs are informed that the membership is for an annual term during their enrollment process. When SPs complete the voice log process to enroll in a membership with HomeAdvisor—which is discussed in detail in my Declaration dated October 18, 2018 submitted in connection with HomeAdvisor's Motion to Compel Arbitration and to Stay Claims ("October 18 Declaration")—this annual term is confirmed. For example, the voice log completed by the SP representative for Plaintiff Ervine informed: "Your membership will be billed annually to the payment method on file in the amount of 287 dollars and 99 cents." Oct. 18 Decl., Ex. 10. The voice log also reiterates that "membership allows consumers to view your profile and ratings and contact you directly. Homeowners have told us that ratings make a significant impact in their hiring decision. Make sure to add ratings and other content to your profile to increase your chances for success." *Id.* All of the PI plaintiffs completed voice logs that affirmed the annual

term of their membership and explained the benefit of their membership profile page as described above. *See* Oct. 18 Decl. ¶¶ 11-12, 15-16 & Exs. 10-12.

21.     HomeAdvisor maintains, in the regular and ordinary course of its business, records regarding the current and past accounts of member SPs. These records include: the SP's profile information and account settings; information pertaining to the SP's enrollment with HomeAdvisor; notes regarding events, transactions and occurrences during the SP's membership; and records reflecting emails and other communications sent by HomeAdvisor to each SP. For purposes of this Declaration, I have reviewed certain HomeAdvisor relating to the HomeAdvisor accounts and membership subscriptions held by the SP businesses associated with Plaintiffs Kourtney Ervine, Iva Haukenes, and Brad and Linda McHenry (collectively, the "PI Plaintiffs"). My understanding is that the PI Plaintiffs are the principals or owners of SPs that previously were members of HomeAdvisor. Specifically, it is my understanding based on review of account records that Kourtney Ervine owns Glass Act Window Cleaning in Lake Park, Florida ("Glass Act"); Brad and Linda McHenry own B&B Carpentry and Cabinet Installation, LLC in Westminster, Colorado ("B&B Carpentry"); and Iva Haukenes owns Bergen Certified Inspections in Post Falls, Idaho ("Bergen Certified Inspections").

22.     I have reviewed the Motion for Preliminary Injunction filed in this case and the Declarations of each of the PI Plaintiffs. I have also reviewed HomeAdvisor website records specifically relating to the member profile pages and/or non-member profile pages previously associated with each of the businesses of the PI Plaintiffs.

23.     HomeAdvisor maintains account notes that reflect communications and interactions with each member or former member SP. Upon reviewing the account notes related

to Glass Act, I found no records indicating any request for HomeAdvisor remove any profile page from HomeAdvisor's website.  I have also confirmed no member profile page or non-member profile page exists on HomeAdvisor's website for Glass Act.  I have further confirmed any HomeAdvisor-controlled URL associated with previously existing member or non-member profile pages for Glass Act is disabled, and signaling via a 404 message to search engines that no such page should be returned in any search.  I can further state that HomeAdvisor has no intent of displaying any member or non-member profile page for Glass Act or associated with Plaintiff Ervine in the future.

24.     Upon reviewing the account notes related to B&B Carpentry, I found no records indicating any request for HomeAdvisor remove any profile page from HomeAdvisor's website. I have also confirmed no member profile page or non-member profile page exists on HomeAdvisor's website for B&B Carpentry.  I have further confirmed any HomeAdvisor-controlled URL associated with previously existing member or non-member profile pages for B&B Carpentry is disabled, and signaling via a 404 message to search engines that no such page should be returned in any search.  I can further state that HomeAdvisor has no intent of displaying any member or non-member profile page for B&B Carpentry or associated with Plaintiffs Brad and Linda McHenry in the future.

25.     Upon reviewing the account notes related to Bergen Certified Inspections, I found no records indicating any request for HomeAdvisor remove any profile page from HomeAdvisor's website.  I have also confirmed no member profile page or non-member profile page exists on HomeAdvisor's website for Bergen Certified Inspections.  I have further confirmed any HomeAdvisor-controlled URL associated with previously existing member or

non-member profile pages for Glass Act is disabled, and signaling via a 404 message to search engines that no such page should be returned in any search. I can further state that HomeAdvisor has no intent of displaying any member or non-member profile page for Bergen Certified Inspections or associated with Plaintiff Haukenes in the future.

26.     Regarding the non-member profile page for Bergen Certified Inspections, Mr. Kent states that the business contact information listed contained an incorrect phone number. I have investigated the circumstances relating to that issue. Based on my investigation, I determined that the phone number error on the Bergen Certified Inspections non-member profile page was a one-off data anomaly. I have not previously encountered any other instances of this type of error, and I have confirmed that it is not a systemic issue that would affect or apply to other member or non-member profile pages.

27.     I have reviewed HomeAdvisor's records and data relating to traffic on the member and non-member profile pages for the PI Plaintiffs. In particular, I reviewed all sessions that began on one of the PI Plaintiffs' profile pages and compared that data to records HomeAdvisor keeps showing transactions during the same user sessions. Based on my review of HomeAdvisor's profile page session and transaction records for the PI Plaintiffs, I can attest to the fact that not a single request for service was submitted on the HomeAdvisor platform as a result of traffic that entered our site via the profile page listed for their businesses (/rated.GlassActWindowCleaning.58137807.html, /rated.BergenCertified.62508119.html and /rated.BBCarpentry.65620492.html) after these businesses requested that we cancel their memberships.

-15-

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

Executed this 2ⁿᵈ day of November, 2018.

_____
Ryan J. Sullivan
Chief Technology Officer
HomeAdvisor, Inc.