IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 16-cv-01849-PAB-KLM
(Consolidated with Civil Action No. 18-cv-01802-PAB-KLM)

In re HOMEADVISOR, INC. LITIGATION

---

**ORDER**

---

This matter[1] is before the Court on Plaintiffs' Motion for Preliminary Injunction and Declaratory Judgment [Docket No. 34].[2] The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

**I. BACKGROUND**

Defendant HomeAdvisor, Inc.[3] is an online business that connects consumers who have home service requests with home service professionals ("HSPs") who have joined defendant's network to perform the tasks requested. Docket No. 34 at 2-3. Plaintiffs are all former members of defendant's network. Docket No. 1 at 15-20, ¶¶ 8-15.

When an HSP purchases a membership through defendant's service, defendant

---

[1]After the briefing on this motion was completed, the Court consolidated Civil Action No. 16-cv-01849-PAB-KLM with Civil Action No. 18-cv-01802-WJM-MEH. Docket No. 82. All citations to the docket herein refer to documents filed in the latter case.

[2]The Court notes that neither party complied with the District of Colorado's Local Rules of Practice in their briefing. See D.C.COLO.LCivR 10.1(d)-(e) (requiring that pleadings shall use "not less than 12 point font" and "shall be double spaced").

[3]For purposes of this motion, references to "defendant" refers to defendant HomeAdvisor, while references to "plaintiffs" refer to the claimants who initiated the lawsuit in Civil Action No. 18-cv-1802-PAB-KLM.

creates an online profile page for that HSP. Docket No. 34 at 3. The profile pages are accessible via internet search engine results or through defendant's online directory. *Id.* When a potential consumer arrives at an HSP's profile page, he or she has access to the contact information the HSP has supplied and may click a button that reads "Get a Quote" to contact that HSP. Docket No. 67 at 7.

Plaintiffs allege that, when a member cancels his or her membership in defendant's network, defendant continues to maintain the profile pages of those former HSPs. Docket No. 34 at 5. Plaintiffs state that, in maintaining former HSPs' profile pages, defendant is engaged in making false misrepresentations about plaintiffs' businesses in order to generate revenue for itself. *Id.* For example, plaintiffs allege that defendant, as of October 7, 2018, maintained a "Get a Quote" button on the profile pages of former HSPs. *Id.* at 9; Docket No. 35-1 23, ¶ 65. Further, plaintiffs claim that, when a customer clicks on the "Get a Quote" button on the page of a former HSP, the customer "may" be taken to a page that states the former HSP does not provide service in the customer's zip code. Docket No. 34 at 6; Docket No. 35-1 at 24, ¶¶ 67-68. Plaintiffs also claim that, on some former HSP profile pages, defendant places an alert that states, "Please Note: This business is not a screened and approved member of HomeAdvisor." Docket No. 34 at 6; Docket No. 35-1 at 36, ¶ 108. Plaintiffs contend that this is misleading and casts the former HSP in a negative light. Docket No. 34 at 6.

Finally, plaintiffs allege that when defendant deletes the content of former HSPs' profile pages, it maintains the URL, which often includes former HSPs' business names. *Id.* at 7. Plaintiffs claim that, as of October 7, 2018, when potential customers completed an internet search for a former HSP's business and clicked on the link to the

former HSP's profile page, the customers were informed that the "page [they] are looking for is no longer available." *Id.*; Docket No. 35-1 at 29, ¶ 81 and at 32, ¶ 90. Plaintiffs contend that this page "gives the false impression that the Former HSPs are no longer in business." Docket No. 34 at 7. Plaintiffs assert that these features harm their businesses by stating false information and by diverting potential customers away from their businesses and to competitors. Docket No. 34 at 11.

Defendant has presented evidence, however, that each of the profile pages that are the subject of plaintiffs' motion have been removed. Docket No. 67 at 7. Indeed, no profile page exists and no non-member profile page exists for plaintiffs' businesses. Docket No. 69 at 13-14, ¶¶ 23-25. Defendant also asserts that the issues plaintiffs raise were all errors that have since been corrected. See Docket No. 69 at 9-11, ¶¶ 15-18. For example, the message that the former HSP does not provide service to a particular area was an "unintended display" that has, as of October 30, 2018, been fixed, and the message no longer appears unless an HSP has actually declined to provide service to that area. Docket No. 69 at 10, ¶ 17. Further, also as of October 30, 2018, the message alerting a potential customer that the former HSP had not been screened and approved by defendant has been altered to now read, "Please Note: This business is not a current member of the HomeAdvisor network." Docket No. 69 at 11, ¶ 18. Finally, the web pages stating that the profile pages of former HSPs were "no longer available" do not exist any longer, as defendant updated its website to send a "404" signal to search engines for those former HSPs' pages, which indicates to the search engine that the page no longer exists and the search engine should no longer display it in search results. *Id.* at 12, ¶ 19. No member page or non-member page

exists for the preliminary injunction plaintiffs on defendant's website. *Id.* at 13-14, ¶¶ 23-25.

Moreover, defendant asserts it does not and has never diverted requests for quotes made via the "Get a Quote" button on the profile pages to other HSPs. Docket No. 69 at 9, ¶ 15. Further, upon reviewing its web traffic data – specifically, all web traffic sessions that began on one of the preliminary injunction plaintiffs' profile pages – it determined that no request for service had ever been submitted on defendant's platform as a result of a user entering the website via one of the preliminary injunction plaintiff's profile page after that plaintiff had canceled his or her membership. Docket No. 69 at 15, ¶ 27. For these reasons, defendant argues no preliminary injunction should issue because there is no threat of irreparable harm. Docket No. 67 at 13-14.

Plaintiffs[4] seek a preliminary injunction (1) enjoining defendant from maintaining the profile pages for the preliminary injunction plaintiffs and the "classes,"[5] (2) requiring that defendant remove the online profile pages and URLs associated with those plaintiffs and the putative classes from its website within five days, and (3) prohibiting defendant from using the business names or information of those plaintiffs or the members of the putative classes or representing that defendant's products or services are associated with those of the plaintiffs or of the putative classes. Docket No. 34-1 at 1-2. Plaintiffs also seek a declaratory judgment declaring that defendant's actions

---

[4]Plaintiffs Ervine, Haukenes, and Brad and Linda McHenry submit this motion.

[5]Plaintiffs have filed a motion for provisional class certification for purposes of this preliminary injunction motion in which they seek to certify four classes of former HSPs. Docket No. 53 at 8.

regarding their profile pages violate the Lanham Act, the Colorado Consumer Protection Act, the Florida Deceptive and Unfair Practices Act, and the Idaho Consumer Protection Act. *Id.* at 2.

## II. LEGAL STANDARD

To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted). Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888-89 (10th Cir. 1989), is the "exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

There are three types of preliminary injunctions that are disfavored in this circuit: (1) injunctions that disturb the status quo, (2) injunctions that are mandatory rather than prohibitory, and (3) injunctions that provide the movant substantially all the relief it could feasibly attain after a full trial on the merits. *See Schrier v. Univ. of Colo.*, 427 F.3d

5

1253, 1260 (10th Cir. 2005).

Plaintiffs argue the injunction they seek is a "prohibitory injunction that will maintain the status quo," Docket No. 78 at 13.  To determine whether injunctive relief would alter the status quo, the Court looks to the "last uncontested status between the parties which preceded the controversy." *Schrier*, 427 F.3d at 1260.  The status quo is "not necessarily the positions that the parties occupied at the time litigation began." *Cobra N. Am., LLC v. Cold Cut Sys. Svenska AB*, 639 F. Supp. 2d 1217, 1229 (D. Colo. 2008).  It is also "not defined by the parties' existing legal rights," but rather by the "reality of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1100 (10th Cir. 1991), *overruled on other grounds by O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973 (10th Cir. 2004).

Applying these standards, the Court finds that the status quo between the parties was the point in time immediately after plaintiffs had canceled their HomeAdvisor memberships.  Plaintiffs agree this is the parties' last uncontested status, but nevertheless argue that, to maintain the status quo, defendant must remove their profile pages.  Docket No. 78 at 13.  But this is where the controversy began – plaintiffs argue the pages must be removed, while defendant argues it has a contractual obligation to maintain each former HSP's profile page until the expiration of his or her membership. Docket No. 67 at 9.  Because the relief plaintiffs seek would require defendant to alter the status quo by removing the profile pages of all former HSPs, the Court finds plaintiffs seek a disfavored injunction.

Moreover, the injunction plaintiffs seek is a mandatory one. A mandatory injunction "requires the nonmoving party to take affirmative action . . . before a trial on the merits occurs." *RoDa Drilling*, 552 F.3d at 1208. "Because the primary goal of a preliminary injunction is to preserve the pre-trial status quo, courts should be especially cautious" when granting mandatory preliminary injunctions. *Id.* A disfavored injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier v. University of Co.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (citing *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). To be entitled to a mandatory injunction, the movant must "make a heightened showing of the four factors." *RoDa Drilling*, 552 F.3d at 1209. The aim in doing so "is to minimize any injury that would not have occurred but for the court's intervention." *Id.* "Whether to issue a preliminary injunction lies in the sound discretion of the trial court." *DERS Grp. SVC LLC v. Western Skyways, Inc.*, No. 17-cv-00560-WYD-MJW, 2017 WL 6945041, at *1 (D. Colo. Dec. 13, 2017).

III. ANALYSIS

    A. <u>Preliminary Injunction</u>

The Court begins by analyzing whether plaintiff has shown a likelihood of irreparable harm. *See First W. Capital Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (noting that, "because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other

requirements will be considered" (internal quotation marks omitted)). Because "[t]he purpose of a preliminary injunction is not to remedy past harm," *Schrier*, 427 F.3d at 1267, the irreparable harm inquiry focuses on whether the plaintiff has demonstrated a "significant risk" that he or she will suffer irreparable injury before a court can render a final decision on the merits of the case. *See id.*; *Greater Yellowstone Coalition v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).

Plaintiffs assert that they will suffer irreparable harm absent an injunction ordering defendant to remove their online profile pages. Plaintiffs argue that, "[i]n unfair competition cases, once a plaintiff establishes a statement is literally false or misleading, irreparable harm is usually presumed." Docket No. 34 at 13. Defendant argues that the Supreme Court, in *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393 (2006), invalidated this presumption. In *eBay*, a patent infringement case, the Supreme Court vacated the grant of a permanent injunction on the basis that neither the district court nor the court of appeals had fairly applied the traditional principles of equity in resolving the motion for injunctive relief. *Id.* at 393-94. Instead of addressing the typical equity principles, the Federal Circuit had articulated a "general rule" that, in patent disputes, "a permanent injunction will issue once infringement and validity have been adjudged." *Id.* The Supreme Court rejected this "categorical grant" of relief, reasoning that "a major departure from the long tradition of equity practice should not be lightly implied" and that "[n]othing in the Patent Act indicates that Congress intended

8

such a departure." *Id.* at 391-92, 394 (internal quotation marks omitted).

The Court has previously determined that the *eBay* rationale extends beyond patent cases. *See Underwood v. Bank of Am. Corp.*, No. 18-cv-02329-PAB-MEH, 2018 WL 6655913, at *5 (D. Colo. Dec. 19, 2018). In so doing, the Court looked to cases from the Third and Ninth Circuits holding that the *eBay* principles apply to trademark infringement cases. *See Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239 (9th Cir. 2013); *see also Ferring Pharm., Inc. v. Watson Pharm., Inc.*, 765 F.3d 205 (3rd Cir. 2014). In *Herb Reed*, the Ninth Circuit held that a "plaintiff must establish irreparable harm" to "obtain a permanent injunction in a trademark infringement case." 736 F.3d at 1249. The Third Circuit held the same, reasoning that "[t]he rationale of the eBay decision was not that patent cases are somehow unique, but rather . . . that the decision whether to grant or deny injunctive relief rests within the equitable discretion of the district courts, and that such discretion must be exercised consistent with traditional principles of equity." *Ferring*, 765 F.3d at 215 (internal quotation omitted).

The Court agreed with these cases, finding that district courts could not depart from the "long tradition of equity practice absent a clear congressional mandate to do so." *Underwood*, 2018 WL 6655913, at *5 (citing cases) (internal quotation omitted). Similarly, the Tenth Circuit has held that "[c]ourts may presume irreparable harm only when a party is seeking an injunction under a statute that *mandates* injunctive relief as a remedy for a violation of the statute."[6] *Malamed*, 874 F.3d at 1140.

---

[6]None of the statutes under which plaintiffs seek injunctive relief – the Lanham Act, the Colorado Consumer Protection Act ("CCPA"), the Florida Deceptive and Unfair

For the same reasons articulated in *Underwood*, the Court finds that the principles set out in *eBay* apply to plaintiffs' false advertising and unfair competition claims. There is no presumption of irreparable harm. Rather, the Court must evaluate plaintiffs' request for a preliminary injunction under the well-established equitable principles used in granting injunctive relief. *See Fresh Del Monte Produce Inc. v. Del Monte Foods Co.*, 933 F. Supp. 2d 655, 660 (S.D.N.Y. 2013) (finding that "the test articulated in *eBay* applies . . . for an injunction against false advertising"); *see also Twitch Interactive, Inc. v. Johnston*, 2019 WL 3387977, at *11 (N.D. Cal. July 26, 2019) (considering motion for preliminary injunction based, *inter alia*, on an unfair competition claim and finding that "courts considering permanent injunctive relief under 15 U.S.C. § 1116(a) must still apply traditional equity principles and inquire whether a plaintiff has demonstrated" irreparable harm).

Plaintiffs argue that they have suffered and will continue to suffer irreparable harm as a result of defendant's use of their profile pages "to direct customers away from [plaintiffs] and denigrate [plaintiffs'] businesses and ability to compete in their markets." Docket No. 34 at 13-14. Plaintiffs claim defendant's actions have caused a

---

Trade Practice Act ("FDUTPA"), and the Idaho Consumer Protection Act ("ICPA") – mandate injunctive relief as a remedy for a violation of the statute. *See* 15 U.S.C. § 1116(a) (Lanham Act providing that "[t]he several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable."); Colo. Rev. Stat. § 6-1-110(1) (CCPA providing that courts "*may* make such orders [for injunctive relief] as may be necessary" to prevent violations of the CCPA) (emphasis added); Fla. Stat. Ann. § 501.211 (FDUTPA providing that "anyone aggrieved by a violation of [the FDUTPA] *may* bring an action" for injunctive relief (emphasis added)); Idaho Code § 48-606(2) (ICPA providing that courts *"are authorized* to issue" injunctive relief to prevent violations of the ICPA (emphasis added)).

loss of customers, a loss of goodwill, and an erosion of plaintiffs' competitive positions in their markets. *Id.* While plaintiffs are correct that "the loss of customers (and the associated goodwill) to [an] unfair competitor can constitute irreparable harm," *Am. Fam. Mut. Ins. Co. v. Gustafson*, No. 08-cv-02772-MSK, 2008 WL 5377969, at *2 (D. Colo. Dec. 22, 2008), they have not demonstrated that such harm is likely absent the Court entering a preliminary injunction.

To the extent plaintiffs' allegations have merit, they relate only to past actions that have since been addressed by defendant. "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will *surely result* without their issuance." *Schrier*, 427 F.3d at 1267 (emphasis added). Defendant has, as of October 30, 2018, removed the profile pages of former HSPs, removed the messages on those pages that they were no longer available, corrected the message that stated former HSPs do not service a particular area, and corrected the message that the former HSP is not an approved member of the network. The alleged harms for which plaintiffs seek a preliminary injunction are no longer present. For this reason, there is little risk of future irreparable harm. *See Alpha and Omega Fin. Serv., Inc. v. Kesler*, 2018 WL 5719992, at *4 (D. Kan. Nov. 1, 2018) (defendant removed allegedly unlawful testimonials, which were the basis of plaintiff's motion for a preliminary injunction, from his website, which rendered preliminary injunction unnecessary).

Plaintiffs present no evidence that, since defendant has taken these remedial measures, defendant has nonetheless continued to make false statements or use plaintiffs' profile pages in a misleading way. Because the relief that plaintiffs seek – the

removal of their profile pages from the HomeAdvisor website and the allegedly misleading alerts on their pages – has already been achieved, they cannot meet their burden of establishing risk of future irreparable injury. *See DTC Energy Grp., Inc. v. Hirschfeld*, No. 17-cv-01718-PAB-KLM, 2018 WL 1138295, at *9 (D. Colo. Mar. 2, 2018), *aff'd*, 912 F.3d 1263 (10th Cir. 2018) ("[P]laintiff cannot establish a risk of irreparable injury based on defendants' past misappropriation of plaintiff's name, services, or operations."); *see also Greenway Univ., Inc. v. Greenway of Ariz., L.L.C.*, No. 11-cv-01055-CMA-KLM, 2011 WL 2669174, at *6 (D. Colo. July 7, 2011) (defendant's remedial efforts "lessen[] the likelihood that Plaintiff will suffer irreparable harm absent an injunction.").

Plaintiffs nonetheless argue that defendant cannot moot their claim for injunctive relief simply by voluntarily ceasing its misconduct because defendant could resume its wrongful activity after the motion is denied. That defendant could reverse its remedial measures and reinstate plaintiffs' defunct profile pages is not a "certain, great, actual and not theoretical" injury that would warrant the Court granting a preliminary injunction. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury. A presently existing actual threat must be shown." *United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Id.* The Court finds the speculative injury of defendant reversing its remedial measures insufficient to warrant a preliminary injunction.

For the foregoing reasons, the Court finds that plaintiffs have failed to show there

is a significant risk that they will suffer a certain, great, and irreparable injury absent a preliminary injunction. Because plaintiffs failed to meet their heightened burden of showing irreparable harm, the Court need not address the remaining preliminary injunction factors.

### B. Declaratory Judgment

Plaintiffs also seek a declaratory judgment finding that defendant's use of the former HSPs' profile pages constitutes a violation of the Lanham Act, the Colorado Consumer Protection Act, the Florida Deceptive and Unfair Practices Act, and the Idaho Consumer Protection Act. Docket No. 34 at 15. Plaintiffs have cited no authority that permits the Court to enter a declaratory judgment in the course of ruling on a motion for a preliminary injunction. "[I]t is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Moreover, plaintiffs did not seek a declaratory judgment in any pleading submitted thus far, such as their complaint. *See* Docket No. 1. A declaratory judgment is not warranted.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiffs' Motion for Preliminary Injunction and Declaratory Judgment [Docket No. 34] is **DENIED**. It is further

**ORDERED** that Plaintiffs' Motion for Provisional Class Certification [Docket No. 53] is **DENIED** as **MOOT**.

DATED August 20, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge